**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                           :

**GANSETT ONE, LLC, SES WEALTH**
**ADVISORS, LLC, GW HOLDINGS,**
**LLC, and MAST AND SON, LLC,**

                **Plaintiffs,**       **Case No. 15-cv-3551 (ALC)**

        -against-

**HUSCH BLACKWELL, LLP,**
**DIANE T. CARTER, JOHN DOES 1-**
**10, JANE DOES 1–10, and ABC**
**CORPS. 1–10,**

              **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## Defendants Husch Blackwell LLP's and Diane T. Carter's Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint

Carolyn J. Fairless
Christopher P. Montville
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street Suite 4500
Denver, Colorado 80202-5647
Telephone: (303) 244-1800

Howard I. Elman
Jeremy C. Bates
Matalon Shweky Elman PLLC
450 Seventh Avenue, 33rd Floor
New York, New York 10123
Telephone: (212) 244-9000

Attorneys for Defendants
Husch Blackwell LLP and Diane T. Carter

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

PLAINTIFFS' ALLEGATIONS ....................................................................................... 2

    A.    Allegations Against the Nezami Sellers ................................................... 3

    B.    Allegations Against Husch Blackwell and Ms. Carter ........................... 5

DISCUSSION .................................................................................................................... 6

I.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER 18 U.S.C. § 1962(C) ..................... 7

    A.    Plaintiffs Do Not Allege Control of a RICO Enterprise ......................... 7

    B.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity ................. 10

        1.    Plaintiffs Have Not Alleged a Closed-Ended Pattern .............. 11

        2.    Plaintiffs Have Not Alleged an Open-Ended Pattern .............. 11

II.    PLAINTIFFS' COMMON-LAW CLAIMS SHOULD BE DISMISSED ....................... 13

    A.    The Court Should Assess the Merits of Plaintiffs' Common-Law Claims .......... 13

    B.    Accepting Plaintiffs' Allegations as True, New York Law Applies ................... 15

    C.    Plaintiffs Fail to State a Claim for Fraud .............................................. 16

        1.    Plaintiffs Do Not Allege Fraudulent Statements By Husch Blackwell ......................................................................... 16

        2.    The Purchase Agreements Do Not Support a Claim for Fraud ............... 17

        3.    Plaintiffs Do Not State a Claim Based on Fraudulent Omissions .......... 20

    D.    Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud ........... 21

    E.    Plaintiffs Fail to State a Claim for Negligent Misrepresentation ......... 23

    F.    The Negligent Supervision Claim Should be Dismissed ....................... 24

III.    DISMISSAL SHOULD BE WITH PREJUDICE ........................................................ 24

CONCLUSION ................................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Anatian v. Coutts Bank Ltd.*,
 193 F.3d 85 (2d Cir. 1999).................................................................. 25

*Apace Commc'ns, Ltd. v. Burke*,
 522 F. Supp. 2d 509 (W.D.N.Y. 2007) ........................................... 18

*Armstrong v. McAlpin*,
 699 F.2d 79 (2d Cir. 1983)............................................................... 22

*Art Capital Grp., LLC v. Neuhaus*,
 70 A.D.3d 605 (1st Dep't 2010) ................................................ 22, 23

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)............................................................ 1, 3, 6, 7, 18

*Azrielli v. Cohen Law Offices*,
 21 F.3d 512 (2d Cir. 1994)............................................................. 7, 8

*Barker v. Henderson, Franklin, Starnes & Holt*,
 797 F.2d 490 (7th Cir. 1986) ........................................................... 20

*Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*,
 980 N.Y.S.2d 21 (1st Dep't 2014) .............................................. 16, 17

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)........................................................................ 1, 6

*Bell v. Hubbert*,
 No. 95–CV–10456, 2007 WL 60513 (S.D.N.Y. Jan. 8, 2007) ........... 7

*Bellikoff v. Eaton Vance Corp.*,
 481 F.3d 110 (2d Cir. 2007)............................................................. 25

*Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*,
 832 F. Supp. 585 (E.D.N.Y. 1993) .................................................... 9

*Casio Computer Co. v. Sayo*,
 No. 98CV3772 (WK), 2000 WL 1877516, (S.D.N.Y. Oct. 13, 2000) ............... 9

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
 187 F.3d 229 (2d Cir. 1999)........................................................ 12, 13

*Consol. Bus Transit, Inc.* v. *Treiber Group, LLC*,
 97 A.D.3d 778 (2d Dep't 2012) ....................................................... 20

*Cosmas v. Hassett*,
    886 F.2d 8 (2d Cir. 1989) ............................................................ 17

*Devaney v. Chester*,
    813 F.2d 566 (2d Cir. 1987) ....................................................... 19

*Doehla v Wathne Ltd., Inc.*,
    No. 98 CIV. 6087 CSH, 1999 WL 566311, (S.D.N.Y. Aug. 3, 1999) ...................... 20, 24

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ................................................. 16

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.*,
    206 F. Supp. 2d 362 (E.D.N.Y. 2002) ........................................... 12

*Fieger v. Pitney Bowes Credit Corp.*,
    251 F.3d 386 (2d Cir. 2001) ....................................................... 15

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) ....................................................... 11

*First Cent. Sav. Bank v. Meridian Residential Capital*,
    No. 09-CV-3444 (DLI)(LB), 2011 WL 838910 (E.D.N.Y. Mar. 3, 2011) ..................... 9

*Friedman v. Arizona World Nurseries Ltd. P'ship*,
    730 F. Supp. 521 (S.D.N.Y. 1990) ............................................. 18, 19

*Friedman v. Hartmann*,
    No. 91 CIV. 1523 (PKL), 1994 WL 97104, (S.D.N.Y. Mar. 23, 1994) .................... 18

*Frost v. Arizona World*,
    927 F.2d 594 (2d Cir. 1991) ....................................................... 18

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*,
    67 F.3d 463 (2d Cir. 1995) ......................................................... 10

*Gregor v. Rossi*,
    120 A.D.3d 447 (1st Dep't 2014) ............................................. 19, 23

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989) ............................................................... 10

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) ......................................................... 6

*In re Eaton Vance Mut. Funds Fee Litig.*,
    403 F. Supp. 2d 310 (S.D.N.Y. 2005) .......................................... 25

*In re Towers Fin. Corp. Noteholders Litig.*,
    No. 93 CIV. 0810 (WK)(AJP), 1995 WL 571888 (S.D.N.Y. Sept. 20, 1995) .......... 20, 21

*In re Towers Fin. Corp. Noteholders Litig.*,
    936 F. Supp. 126 (S.D.N.Y. 1996) ................................................................. 20

*In re Vebeliunas*,
    252 B.R. 878 (Bankr. S.D.N.Y. 2000) ........................................................... 21

*Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*,
    363 F.3d 137 (2d Cir. 2004) ........................................................................ 15

*Jolly King Rest., Inc. v. Hershey Chan Realty, Inc.*,
    625 N.Y.S.2d 35 (1995) ............................................................................... 20

*Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*,
    No. 00 CV. 9214 (RWS), 2003 WL 1751780 (S.D.N.Y. Apr. 1, 2003) .......................... 18

*Kalimantano GmbH v. Motion in Time, Inc.*,
    939 F. Supp. 2d 392 (S.D.N.Y. 2013) ........................................................ 7, 13

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) .................................................................... 7

*King Cnty., Wash. v. IKB Deutsche Industriebank AG*,
    863 F. Supp. 2d 288, 315 (S.D.N.Y. 2012) ................................................... 23

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014) ................................................................... 18, 19

*Learning Annex, L.P. v. Blank Rome LLP*,
    106 A.D.3d 663 (1st Dep't 2013) ................................................................. 22

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ........................................................................ 21

*Leung v. Law*,
    387 F. Supp. 2d 105 (E.D.N.Y. 2005) .......................................................... 11

*Lewis v. Rosenfeld*,
    138 F. Supp. 2d 466 (S.D.N.Y. 2001) .......................................................... 23

*Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.*,
    No. 05CIV6745(RJS), 2008 WL 833230 (S.D.N.Y. Mar. 26, 2008) .......................... 16

*Mason Tenders Dist. Council Pension Fund v. Messera*,
    958 F. Supp. 869 (S.D.N.Y. 1997) ................................................................. 9

*Miranda v. Ponce Fed. Bank,*
  948 F.2d 41 (1st Cir. 1991) ................................................................. 7

*Morin v. Trupin,*
  711 F. Supp. 97 (S.D.N.Y. 1989) .............................................. 2, 9, 20, 21, 22

*Nastro v. D'Onofrio,*
  542 F. Supp. 2d 207 (D. Conn. 2008) ................................................. 9

*Pearl v. 305 E. 92nd St. Corp.,*
  156 A.D.2d 122 (1st Dep't 1989) .................................................... 22

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
  446 F. Supp. 2d 163 (S.D.N.Y. 2006) ............................................... 23

*Pope v. Rice,*
  No. 04 CIV. 4171 (DLC), 2005 WL 613085 (S.D.N.Y. Mar. 14, 2005) ................... 24

*Pross v. Katz,*
  784 F.2d 455 (2d Cir. 1986) ........................................................ 2

*Quintel Corp., N.V. v. Citibank, N.A.,*
  589 F. Supp. 1235 (S.D.N.Y. 1984) ................................................. 17

*Reves v. Ernst & Young,*
  507 U.S. 170 (1993) ............................................................ 7, 8, 9

*Schlaifer Nance & Co. v. Estate of Warhol,*
  927 F. Supp. 650 (S.D.N.Y. 1996) .................................................. 21

*Schultz v. Boy Scouts of Am., Inc.,*
  65 N.Y.2d 189 (1985) .............................................................. 15

*Simon v. Philip Morris Inc.,*
  124 F. Supp. 2d 46 (E.D.N.Y. 2000) ............................................... 15

*Span Enterprises v. Wood,*
  274 S.W.3d 854 (Tex. App. 2008) .................................................. 16

*State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.,*
  904 A.2d 775 (N.J. App. Div. 2006) ............................................... 16

*Struebel v. Fladd,*
  75 A.D.3d 1164 (4th Dep't 2010) .................................................. 24

*Trask v. Kasenetz,*
  818 F. Supp. 39 (E.D.N.Y. 1993) .................................................. 14

*Ultramares Corp. v. Touche,*
    255 N.Y. 170 (1931) ................................................................................. 23

*UniCredito Italiano SPA v. JPMorgan Chase Bank,*
    288 F. Supp. 2d 485 (S.D.N.Y. 2003) ...................................................... 16

*United States v. Hutchinson,*
    573 F.3d 1011 (10th Cir. 2009) .................................................................. 8

*Waterman v. Transp. Workers' Union Local 100,*
    8 F. Supp. 2d 363 (S.D.N.Y. 1998) .......................................................... 14

*Waterman v. Transp. Workers' Union Local 100,*
    176 F.3d 150 (2d Cir. 1999)...................................................................... 14

## STATUTES

18 U.S.C. § 1341 .................................................................................................... 10

18 U.S.C. § 1343 .................................................................................................... 10

18 U.S.C. § 1961 .................................................................................................... 10

18 U.S.C. § 1962 ................................................................................. 7, 8, 9, 10, 14

28 U.S.C. § 1332 .................................................................................................... 14

28 U.S.C. § 1367 .................................................................................................... 14

28 U.S.C. § 1441 .................................................................................................... 14

Pub. L. No. 112–63, § 205 (2011) ........................................................................ 14

## RULES

Fed. R. Civ. P. 12 ......................................................................................... 3, 6, 14, 24

Fed. R. Civ. P. 9 ...................................................................................... 11, 16, 17, 18

Tex. Disc. R. Prof. Cond., Preamble ¶ 15 .............................................................. 2, 24

## PRELIMINARY STATEMENT

Plaintiffs allege that, in 2014, an individual named Kamran Nezami defrauded them into purchasing interests held by him in healthcare companies. The Amended Complaint reads as if Mr. Nezami is the principal defendant and primary target in this lawsuit. But Mr. Nezami is not even a party. Instead, Plaintiffs have sued two parties who have only a tenuous connection to the factual allegations in the Amended Complaint—the law firm of Husch Blackwell LLP, and one of its partners, Diane T. Carter (collectively, "Husch Blackwell").

To hear Plaintiffs tell it, Husch Blackwell, by virtue of its alleged status as legal counsel to Mr. Nezami, somehow knew everything Mr. Nezami did, and bears responsibility for all of his claimed wrongdoing. To advance their theory, Plaintiffs plead dozens of conclusory allegations that Husch Blackwell "had knowledge of," and "willfully" "condoned" Mr. Nezami's behavior. Plaintiffs' perfunctory approach to pleading Husch Blackwell's complicity mirrors that of the famously unsuccessful plaintiffs in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)—right down to their specific choice of words*, see id.* at 669, 680–81. As the Supreme Court explained, such an approach simply "will not do." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff may not "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id*. at 687.

This prohibition against conclusory allegations, when applied to the elements of Plaintiffs' individual causes of action, requires dismissal of the Amended Complaint in its entirety. Plaintiffs begin with a claim under the federal Racketeering Influenced Corrupt Organizations Act ("RICO"). Yet they do not allege any facts that, even if true, could satisfy two mandatory elements of a RICO claim: management or control of the enterprise, and continuity.

Plaintiffs' common-law claims fare no better. They allege that Husch Blackwell defrauded them, but one would search the Amended Complaint in vain for any specific

misrepresentation made by a Husch Blackwell lawyer. To the extent that Plaintiffs fall back on a nondisclosure theory, they ignore the fundamental rule that lawyers "[are not] required to tattle on their clients in the absence of some duty to disclose." *Morin v. Trupin*, 711 F. Supp. 97, 113 (S.D.N.Y. 1989).

The same goes for Plaintiffs' claim of aiding-and-abetting fraud. Plaintiffs allege that Husch Blackwell is liable under this theory because its lawyers attended meetings where Mr. Nezami allegedly made misstatements, and because it drafted legal documents that contained supposedly inaccurate warranties. Under New York law, however, lawyers cannot incur aiding-and-abetting liability for legal work undertaken in the course of their representation of a client.

Finally, Plaintiffs' fraudulent nondisclosure and negligent misrepresentation claims require that they establish privity or near-privity between themselves and Husch Blackwell. Plaintiffs' reliance on the Texas Disciplinary Rules of Professional Conduct to satisfy this requirement is undermined by the rules themselves, which "do not undertake to define standards of civil liability." Tex. Disc. R. Prof. Cond., Preamble ¶ 15. Because Plaintiffs fail to state a claim—after the Court already permitted them to amend in anticipation of this motion—the Court should dismiss the Amended Complaint with prejudice.

## **PLAINTIFFS' ALLEGATIONS**

The Amended Complaint spans 40 pages, contains 183 paragraphs and subparagraphs of allegations, and attaches 81 pages of exhibits—a "prolixity . . . designed to obscure rather than to illumine the events giving rise to this lawsuit." *Pross v. Katz*, 784 F.2d 455, 456 (2d Cir. 1986). Most of these allegations are directed at Mr. Nezami. Husch Blackwell, however, will place the focus of this motion where it belongs—on the non-conclusory allegations that actually relate to

Husch Blackwell.[1] This eliminates the great bulk of the Amended Complaint.

### A.    Allegations Against the Nezami Sellers

Mr. Nezami and his company, Kamran Nezami, LLC (the "Nezami Sellers"), own interests in a series of healthcare-related companies (the "Nezami Companies"). Mr. Nezami holds, or has held, executive management positions in a number of these companies. (Am. Compl. ¶¶ 36, 45, 47.) According to Plaintiffs, in September 2013, Mr. Nezami "diverted funds belonging to the [Nezami] Companies" to "live a lavish lifestyle . . . ." (*Id.* ¶ 99(c).) Plaintiffs allege that, six months after the fact, he treated these disbursements as "loans" or "draws." (*Id.*) To document this arrangement, Mr. Nezami signed two short-term promissory notes. (*Id.* ¶¶ 14, *Exs. H* and *I.*) Plaintiffs characterize the promissory notes as a "payment plan," but also allege that they constituted a cover up of the alleged embezzlement. (*Id.* ¶¶ 8, 99(c).)

Meanwhile, beginning in November 2013, two representatives of Plaintiffs attended meetings with Mr. Nezami where they discussed the possibility of purchasing some of the Nezami Sellers' interests in the Nezami Companies. (*Id.* ¶¶ 57–70.) Each Plaintiff then purchased fractional membership interests in the Nezami Companies (the "Membership Interests"). (*Id.* ¶¶ 55–56, *Exs. A–D.*) Plaintiffs signed the first of four Purchase Agreements conveying the Membership Interests on March 12, 2014. (*Id.* ¶ 55.) By May 27, 2014, Plaintiffs had completed their purchases of the Membership Interests from the Nezami Sellers. (*Id.* ¶ 56.)

Plaintiffs allege that, in making their purchases, they relied on dozens of alleged fraudulent statements and omissions attributable to Mr. Nezami. (*See e.g. id.* ¶¶ 91–99.) The vast majority of these allegations relate to issues far removed from Plaintiffs' purchases—and even

---

[1] Husch Blackwell does not admit the truth of the allegations contained in the Amended Complaint, but only assumes, as the Court must for purposes of a Rule 12(b)(6) motion, the truth of non-conclusory, well-pled allegations. *Iqbal*, 556 U.S. at 664.

farther removed from Husch Blackwell. For example: Plaintiffs allege that Mr. Nezami lied to them about his military service. (*Id.* ¶ 98). They assert that Mr. Nezami claimed that he was planning to purchase a professional football franchise, when (one assumes) no such plan was actually in the works. (*Id.* ¶ 86.) They allege that Mr. Nezami pointed a gun at a nonparty during a business meeting. (*Id.* ¶ 48.) And they claim that Mr. Nezami, in financial statements, boasted ownership of two houses, several cars, and a private jet, and yet—unbeknownst to Plaintiffs— Mr. Nezami had, in truth, merely leased these luxuries. (*Id.* ¶ 99(e).)

Of the many alleged instances of Mr. Nezami's fraud, Plaintiffs tie only one group of alleged misrepresentations to Husch Blackwell: those made *by the Nezami Sellers* in the Purchase Agreements, which Husch Blackwell drafted.[2] (*Id.* ¶ 91.) Plaintiffs claim that the Nezami Sellers breached three provisions in the Purchase Agreements.

First, the Nezami Sellers warranted that they had full and unencumbered ownership of the Membership Interests. (*Id.* ¶¶ 91(a), (b).) According to Plaintiffs, the Nezami Sellers actually owned only 18 of the 19 Membership Interests. (*Id.* ¶¶ 50, 51.) Plaintiffs disclaim any resulting damage, however, confessing that the missing interest was subsequently "gifted" to them. (*Id.* ¶ 51.) Plaintiffs also claim a breach of this warranty because the Nezami Sellers allegedly used some of the Membership Interests to collateralize promissory notes. (*Id.* ¶¶ 89, 92.) Again, Plaintiffs do not claim resulting damages; although the notes at issue matured in July 2014, Plaintiffs allege neither that Mr. Nezami defaulted on the notes, nor that the secured creditor attempted to foreclose on his collateral. (*See generally* Am. Compl.)

---

[2] The Amended Complaint also suggests that Husch Blackwell gave legal advice about how to characterize the "embezzled funds" on financial statements, but does not allege that Husch Blackwell prepared, transmitted, or even saw, the financial statements at issue. (*See, e.g.*, Am. Compl. ¶¶ 14–20.)

Second, the Nezami Sellers represented in the Purchase Agreements that they did not have investigations or lawsuits pending against them. (*Id.* ¶ 91(c).) Plaintiffs allege, however, "on information and belief," that the FBI, IRS, and Department of Homeland Security were targeting the Nezami Sellers with unspecified investigations. (*Id.* ¶ 91(e).) Plaintiffs also say that the Nezami Sellers were parties to numerous lawsuits, but identify only one: a declaratory judgment action filed by Mr. Nezami against Plaintiffs themselves. (*Id.* ¶¶ 85, 91, 95.)

Third, the Purchase Agreements contained what Plaintiffs characterize as "Put Options." (*Id.* ¶ 93.) Plaintiffs allege, again "on information and belief," that Mr. Nezami never intended to honor the options. (*Id.* ¶¶ 94, 95.) When Plaintiffs attempted to exercise the options, Mr. Nezami filed the aforementioned declaratory judgment lawsuit against them in Texas. (*Id.* ¶ 95.)

### B.      Allegations Against Husch Blackwell and Ms. Carter

As for Husch Blackwell, Plaintiffs have far less to say. They allege that Husch Blackwell has offices throughout the United States and in London. (*Id.* ¶ 28.) Ms. Carter, a Husch Blackwell partner based in Texas, joined the firm in mid-2013. (*Id.* ¶ 29.) She specializes in healthcare law, and has extensive experience performing transactional and regulatory work in the healthcare industry. (*Id.* ¶ 29.)

Plaintiffs do not claim that Husch Blackwell represented them. (*See generally* Am. Compl.) Instead, they allege that it represented some of the Nezami Companies. (*Id.* ¶ 37.) As Plaintiffs tell it, Husch Blackwell also represented, and continues to represent, Mr. Nezami. (*Id.*)

When discussing Husch Blackwell's role in the Nezami Sellers' supposed conspiracy, Plaintiffs follow a rote pattern. First, they allege a fraudulent act or omission by Mr. Nezami. (*See generally* Am. Compl.) Second, they add a perfunctory statement that Ms. Carter or Husch Blackwell "knew" or "had knowledge" of Mr. Nezami's fraud. (*Id.*, ¶¶ 6, 8, 12, 19, 20, 53, 69, 70, 72, 74, 75, 85, 86, 87, 88, 94, 97(a), (c), (d), (f), 98, 99(a), (b), (e), (g), (h), (i), (j), 101, 102,

103, 105, 111, 120, 129, 132, 138, 145, 147, 156.) Third, for each of Mr. Nezami's allegedly fraudulent acts, the Amended Complaint interjects a conclusory allegation that Husch Blackwell or Ms. Carter, in some undefined way, "actively" "acquiesced," "aided and abetted," "assisted," "allowed," "encouraged," "participated," or "supported" Mr. Nezami. (*Id.* ¶¶ 1, 7, 8, 9, 12, 13 14, 15, 19, 20, 21, 22, 38, 46, 52, 67, 69, 70, 71, 72, 73, 74, 79, 84, 85, 86, 91, 96, 97, 99, 100, 101, 102, 105, 109, 124, 133, 146.)

Amidst this sea of conclusory allegations, Plaintiffs include just a few specific assertions regarding Husch Blackwell. First, Plaintiffs allege that Husch Blackwell drafted the four Purchase Agreements. (*Id.* ¶ 52.) Second, they allege that Husch Blackwell advised the Nezami Companies to treat the funds that Mr. Nezami had "embezzled" as loans or draws, and drafted two promissory notes to facilitate this treatment. (*Id.* ¶ 14.) Third, they allege that Ms. Carter was present at meetings where Mr. Nezami made fraudulent representations and omissions. (*See, e.g.*, *id.* ¶¶ 10, 11, 16, 17, 61, 69, 70.) During one of these meetings, Ms. Carter supposedly agreed with Mr. Nezami that he was the "most conservative person" Ms. Carter knew. (*Id.* ¶ 66.) Mr. Nezami also allegedly said that Ms. Carter "runs [his] life." (*Id.* ¶ 39.) Plaintiffs do not identify any other statement made by a Husch Blackwell lawyer.

## DISCUSSION

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted when a complaint does not state a claim that would be "plausible on its face." *Twombly*, 550 U.S. at 570. Although a court usually should accept the allegations in a complaint as true, this general rule "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Under *Iqbal*, generic allegations such as that the defendant "knew of, condoned, [or] willfully and maliciously agreed to" some course of

misconduct fail to state a claim. *Iqbal*, 556 U.S. at 680.

## I.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER 18 U.S.C. § 1962(C)

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Bell v. Hubbert,* No. 95–CV–10456, 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007) (quoting *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir. 1991)). RICO claims have an "almost inevitable stigmatizing effect on those named as defendants . . . ." *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 655 (S.D.N.Y. 1996). Courts therefore have "a duty to critically assess RICO claims at the threshold, to assure that a plaintiff's claim of a RICO violation is not used improperly as a club to bludgeon settlement or surrender without reciting legally sufficient allegations." *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 407 (S.D.N.Y. 2013).

Plaintiffs' RICO claim arises under 18 U.S.C. § 1962(c). To state a claim under section 1962(c), Plaintiffs must allege facts that, if true, would establish that they were injured by Husch Blackwell's "(1) conduct [*i.e.*, control or direction] (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Azrielli v. Cohen Law Offices,* 21 F.3d 512, 520 (2d Cir. 1994) (internal quotations omitted). Plaintiffs completely fail to allege that Husch Blackwell had control of a RICO enterprise and also fail to allege a pattern of racketeering activity.

### A.   Plaintiffs Do Not Allege Control of a RICO Enterprise

Under the controlling case of *Reves v. Ernst & Young*, 507 U.S. 170 (1993), Plaintiffs' section 1962(c) claim must be dismissed for failure to allege that Husch Blackwell participated in the control of the alleged racketeering enterprise. In *Reves*, a farming cooperative hired accountants from Ernst & Young to conduct an audit. *Id.* at 173. In reporting the results of that audit to the cooperative's board, the accountants allegedly made affirmative misrepresentations, and concealed facts to create a false appearance of the cooperative's solvency. *Id.* at 174-75. In

reality, the cooperative was in dire financial straits as the result of fraud by its general manager. *Id.* According to the plaintiffs, who were investors in the cooperative, Ernst & Young made these misrepresentations to assist the general manager in defrauding them into making their investments. *See id.*

After the cooperative filed for bankruptcy, the investors sued Ernst & Young alleging, among other things, that the accountants had violated section 1962(c). *Id.* at 175. In response, Ernst & Young argued that accounting services—*even when conjoined with fraud*—could not, as a matter of law, rise to the level of "conduct[ing] or participat[ing], directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c); *Reves*, 507 U.S. at 175.

The Supreme Court agreed. It held that mere "participation" in a racketeering enterprise was inadequate; rather, section 1962(c) required that the defendant have a role in actively directing the enterprise. *Id.* at 178. The Supreme Court therefore adopted what it called the "operation or management" test—requiring, as the name suggests, that the defendant "participate in the operation or management of the enterprise itself." *Id.* at 185. Even if the accounting firm had truly reported false or misleading audit results, its involvement did not rise to the level necessary to satisfy this requirement. *Id.* at 186.

The Second Circuit has adopted "the strictest formulation [of the operation or management test] apparently available[.]" *United States v. Hutchinson*, 573 F.3d 1011, 1034 (10th Cir. 2009) (surveying federal appellate courts). In particular, it recognizes that providing legal services and advice cannot constitute "operation or management." *See, e.g.*, *Azrielli*, 21 F.3d at 521 (finding that, because the defendant "acted as no more than [an] attorney," the plaintiff's section 1962(c) claim could not stand). This remains true even when the lawyer "ha[s] knowledge of the alleged enterprise's illicit nature . . . ." *Nastro v. D'Onofrio*, 542 F. Supp. 2d

207, 217 (D. Conn. 2008); *see also, e.g.*, *First Cent. Sav. Bank v. Meridian Residential Capital*, No. 09-CV-3444 (DLI)(LB), 2011 WL 838910, at *10 (E.D.N.Y. Mar. 3, 2011) (dismissing section 1962(c) claim because, "even if the [lawyer] defendants knew of the fraud, knowledge is not sufficient to demonstrate that the defendant directed or operated the scheme").

Of critical importance is the distinction between *facilitating* the operation of an enterprise, and actually *controlling* the enterprise itself. Only the latter states a claim under section 1962(c). *See Morin v. Trupin*, 835 F. Supp. 126, 135 (S.D.N.Y. 1993); *Casio Computer Co. v. Sayo*, No. 98CV3772 (WK), 2000 WL 1877516, at *21 (S.D.N.Y. Oct. 13, 2000) ("There is a great difference between having actual control over an enterprise and associating with an enterprise in ways that do not involve control."). Even a lawyer who "may have intentionally assisted a scheme to defraud" cannot be liable under section 1962(c), absent independent operation or control. *Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 832 F. Supp. 585, 592 (E.D.N.Y. 1993). Likewise, a lawyer's "substantial persuasive power to induce the alleged enterprise to take certain actions," standing alone, does not pass muster under *Reves*. *Morin*, 835 F. Supp. at 135; *see also Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F. Supp. 869, 883–85 (S.D.N.Y. 1997) (dismissing section 1962(c) claim, even though the defendant lawyer allegedly attempted to influence the RICO enterprise through bribery, as the alleged bribery did "not reflect the exertion of 'control' envisioned by *Reves*").

Here, Plaintiffs do not allege—even in the most conclusory terms—that Husch Blackwell managed or operated a racketeering enterprise. Instead, Plaintiffs' case rests solely on the conclusory supposition that the firm provided "help and active assistance" to Mr. Nezami. (Am. Compl. ¶ 1.) *Cf. Ashcroft*, 556 U.S. at 680 (holding that allegations that the defendant was "instrumental" in and the "principal architect" of certain wrongdoing were too conclusory to

state a claim). Because Plaintiffs fail to allege facts that could establish management or control by Husch Blackwell, they fail to state a claim under section 1962(c).

### B.        Plaintiffs Fail to Allege a Pattern of Racketeering Activity

A defendant also cannot be liable under section 1962(c) unless she has engaged in "a pattern of racketeering activity." *See id.* The pattern element can be met in one of two ways. First, a plaintiff can allege a "closed-ended" pattern of "past criminal conduct 'extending over a substantial period of time.'" *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995). Second, a plaintiff can claim an "open-ended" pattern, consisting of "past criminal conduct coupled with a threat of future criminal conduct." *Id.*

For the purpose of establishing a pattern, the only conduct that counts is conduct that independently qualifies as a predicate act. *Id.* at 467–68 ("[W]hen Congress said predicates must demonstrate 'continuity' before they may form a RICO pattern, it expressed an intent that RICO reach activities that amount to or threaten long-term criminal activity."), citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 243 n. 4 (1989); *see also* 18 U.S.C. § 1961(1) (enumerating the federal crimes that constitute predicate acts). Consequently, the pattern analysis here must begin by divining the exact predicate acts on which Plaintiffs rely, and when those predicate acts occurred.

In this case, Plaintiffs identify only two predicate acts: mail fraud and wire fraud. (*See* Am. Compl. ¶ 120.) Because the Amended Complaint does not identify a single actual mailing, the mail-fraud statute could not actually support a predicate act. *See* 18 U.S.C. § 1341. Wire fraud, meanwhile, requires a communication between different states. *See id.* § 1343. Consequently, Plaintiffs can establish these predicate acts only through allegations involving interstate transmission of emails, phone calls, or other wire communications.

The Amended Complaint contains several generic references to "interstate e-mails" and

-10-

"interstate telephone calls." (*See* Am. Compl. ¶¶ 1, 10, 19, 60, 105, 118.) But Plaintiffs do not identify even one specific statement made by a Husch Blackwell lawyer in a telephone call or email, let alone describe the communication's timing, substance, or specific participants. (*See id.*) Because the heightened requirements of Rule 9(b) apply to mail and wire fraud claims, these vague references cannot constitute predicate acts—and they therefore play no role in the pattern analysis. *See, e.g.*, *Leung v. Law*, 387 F. Supp. 2d 105, 114 (E.D.N.Y. 2005) (dismissing wire fraud allegations where they "d[id] not provide any details of the individual communications that [the plaintiff] believes were fraudulent").

That leaves only two alleged communications. First, Plaintiffs allege that the Purchase Agreements were transmitted through interstate wire. (Am. Compl. ¶ 120.) Second, Plaintiffs allege that they funded their investments through interstate wire transfers. (*Id.* ¶¶ 56, 121.) These allegations, however, constitute neither an open-ended nor a closed-ended pattern.

### 1.   Plaintiffs Have Not Alleged a Closed-Ended Pattern

The Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (affirming dismissal of RICO claims when final predicate act occurred two-and-a-half years after the first act). Here, Plaintiffs entered into the first of the Purchase Agreements on March 12, 2014, and the last on May 21, 2014—a span of about nine weeks. (*See* Am. Compl., *Ex. A*, p. 1; *Ex. D*, p. 2.) With respect to the wire transfers, Plaintiffs initiated the first transfer on March 14, 2014, and the final transfer on May 27, 2014—a total of barely ten weeks. All told, Husch Blackwell's alleged mail and wire fraud together lasted two-and-a-half months. Consequently, Plaintiffs fail to allege a closed-ended pattern.

### 2.   Plaintiffs Have Not Alleged an Open-Ended Pattern

Nor have Plaintiffs alleged an open-ended pattern, which requires that a plaintiff do more

than simply allege, without supporting facts, that a RICO enterprise is "continuing." *See FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 371 (E.D.N.Y. 2002) ("[P]laintiffs' allegation that defendants regularly conduct their business through similar fraudulent schemes is wholly conclusory and completely unsupported by the factual allegations in the complaint."). Instead, the plaintiff must establish "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).

Courts evaluate open-ended continuity first by considering whether "the collective business and other entities that comprise the enterprise 'primarily conduct a legitimate business' . . . ." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 515 (S.D.N.Y. 2007) (quoting *Cofacredit*, 187 F.3d at 243) *aff'd,* 328 F. App'x 695 (2d Cir. 2009). If the businesses are primarily legitimate, then the plaintiff must establish that the predicate acts constitute the businesses' "regular way of operating . . . ." *Cofacredit*, 187 F.3d at 243.

Here, Plaintiffs dutifully include allegations that the "the conduct, enterprise and scheme of Defendants working with [the] Nezami Sellers is continuing." (Am. Compl. ¶ 118; *see also id.*, ¶¶ 1, 7, 22, 74, 115.) But they allege no facts that support these legal conclusions. To start with, the Amended Complaint does not aver facts showing that the parties conducted anything other than primarily legitimate businesses. With respect to Husch Blackwell, Plaintiffs allege that it is among the largest law firms in the United States, with 600 lawyers and offices throughout the United States. (*Id*. ¶ 28.) Yet, they allege wrongdoing by only two lawyers, practicing in a single office, providing services to a single client. Similarly, Plaintiffs concede that Ms. Carter is an experienced lawyer who regularly advises clients on transactional, regulatory, and compliance matters. (*Id*. ¶ 29.) But, of all the legal work that she has provided throughout her career, the only

predicate acts with which Plaintiffs associate Ms. Carter are the transmission of four Purchase Agreements and four fund transfers over three months.

Even with respect to Mr. Nezami, the Amended Complaint describes him as an executive officer of a series of healthcare companies. (*Id.* ¶ 36.) In this role, he is "responsible for the overall development and implementation of the strategic vision and operating initiatives that drives each of the businesses." (*Id.*) The facts in the Amended Complaint do not support an inference that any of the members of the alleged enterprise are involved in anything but a primarily legitimate business.

Having failed to allege that the businesses comprising the enterprise are inherently illegitimate, Plaintiffs instead must establish that the parties to the purported enterprise regularly conducted their legitimate businesses by illegitimate means. *Cofacredit*, 187 F.3d at 243. As discussed, the alleged racketeering acts consisted solely of the interstate transmission of the four Purchase Agreements and the four wire transfers of investment funds, all within the span of three months. But even evidence that a defendant "engaged in a serious, but discrete and relatively short-lived scheme to defraud a handful of victims through racketeering activity" fails to establish a criminal business model. *Id.* at 244; *see also Kalimantano*, 939 F. Supp. 2d at 406 (finding that "[f]our fraudulent transactions are an insufficient basis on which to assert that [the defendant's] business model is based on selling fraudulent watches"). Plaintiffs therefore fail to plead a pattern of racketeering activity as a matter of law.

## II.     PLAINTIFFS' COMMON-LAW CLAIMS SHOULD BE DISMISSED

### A.     The Court Should Assess the Merits of Plaintiffs' Common-Law Claims

Husch Blackwell removed this case based, in part, on federal question jurisdiction. (*See* Notice of Removal, *Doc. 1*.) But even if the Court dismisses the federal section 1962(c) claim, it nonetheless has two alternate jurisdictional bases upon which to reach the substance of Plaintiffs'

common-law claims—and then dismiss them with prejudice. The Court should exercise both.

First, the Court should exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). When "the outcome of [the state law] claim is plain," judicial efficiency warrants dismissal of state-law claims with prejudice rather than remand. *Waterman v. Transp. Workers' Union Local 100*, 8 F. Supp. 2d 363, 369 n.2 (S.D.N.Y. 1998) (retaining jurisdiction over state-law legal malpractice claim, and then dismissing it under Rule 12(b)(6)), *aff'd*, 176 F.3d 150 (2d Cir. 1999). Here, to evaluate the sufficiency of the section 1962(c) claim and its alleged mail- and wire-fraud predicates, the Court necessarily will have to untangle the prolix and discursive Amended Complaint. Plaintiffs' common-law claims, meanwhile, rest on the same undifferentiated body of alleged representations and omissions as the alleged predicate acts. There is no reason for a Justice of the New York State Supreme Court to duplicate this Court's effort when the outcome is plain: dismissal of the Amended Complaint in its entirety.

Second, the Court has nondiscretionary diversity jurisdiction. *See* 28 U.S.C. § 1332. Based on Husch Blackwell's investigation, complete diversity of citizenship exists among the parties. (*See* Notice of Removal, *Doc. 1*.) Although Husch Blackwell has a single member who resides in New York State, the plain language of 28 U.S.C. § 1441(b) indicates that the "forum-defendant rule" applies only to "civil action[s] otherwise removable *solely* on the basis of [diversity] jurisdiction" (emphasis added).[3] *Id.* In other words, this rule does not apply where, as here, the party has removed the case based on *both* diversity jurisdiction *and* federal question jurisdiction. The Court therefore must retain jurisdiction.

---

[3] A historical line of district court decisions applied the forum-defendant rule even to cases removed first under federal-question jurisdiction. *See, e.g.*, *Trask v. Kasenetz*, 818 F. Supp. 39 (E.D.N.Y. 1993). Congress since has amended section 1441(b), making clear that it does not apply when an alternate basis for removal exists. *See* Pub. L. No. 112–63, § 205 (2011).

**B.    Accepting Plaintiffs' Allegations as True, New York Law Applies**

When analyzed based on Plaintiffs' allegations, New York law applies to the liability aspect of the common-law claims. Because this Court sits in New York, it applies New York's choice-of-law rules. *See Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). Under the doctrine of *dépeçage*, each aspect of a plaintiff's claims is analyzed independently. *See Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 75 (E.D.N.Y. 2000). The choice-of-law analysis begins by considering whether New York law is actually in conflict with the law of other jurisdictions having an interest in the claims and defenses in the case. *Fieger,* 251 F.3d at 393. If not, New York courts dispense with the choice-of-law analysis and simply apply New York law. *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).

Otherwise, the "interests test," focusing "almost exclusively, [on] the parties' domiciles and the locus of the tort," applies. *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985). Here, the locus of the tort—as alleged by Plaintiffs in the very first paragraph of the Amended Complaint—is New York, where Mr. Nezami, with Husch Blackwell's supposed assistance, allegedly defrauded Plaintiffs "during a series of in-person meetings that took place in New York and many interstate e-mails, text messages, and phone calls directed to the Plaintiffs, some of whom had offices in New York during the relevant period of time." (Am. Compl. ¶ 1.) Indeed, the Amended Complaint mentions New York 30 times, far more than any other state. The second factor weighs toward either New Jersey, where Plaintiffs are domiciled; New York, where some Plaintiffs have offices; Texas, where Ms. Carter resides; Missouri, Husch Blackwell's alleged principal place of business; or the host of other states where Husch Blackwell has offices. (*Id.* ¶ 1, 17, 24–27, 28.) This factor is a draw. Consequently, the law of New York, as the locus of the tort, applies even under the interests test.

Moreover, the elements of fraud are substantially similar between New York, New

Jersey, and Texas. *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 570 (S.D.N.Y. 2014) (New York and New Jersey); *Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.*, No. 05CIV6745(RJS), 2008 WL 833230, at *8 (S.D.N.Y. Mar. 26, 2008) (New York and Texas). The same is true for aiding and abetting, where recognized. *Compare State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc.*, 904 A.2d 775, 784 (N.J. App. Div. 2006) *with UniCredito Italiano SPA v. JPMorgan Chase Bank*, 288 F. Supp. 2d 485, 502 (S.D.N.Y. 2003); *see also Span Enterprises v. Wood*, 274 S.W.3d 854, 858–59 (Tex. App. 2008) (casting doubt on whether the tort exists in Texas). With respect to negligent misrepresentation, even if a substantive difference of law existed, New York law would nonetheless control under the interests test. (*See* Am. Compl. ¶ 1.) New York law applies to all claims.

### C.      Plaintiffs Fail to State a Claim for Fraud

For their common law fraud claim against Husch Blackwell, Plaintiffs reference both "misrepresentations" as well as "omissions," suggesting an affirmative fraud claim or, alternatively, one for fraudulent nondisclosure. Plaintiffs fail to state a claim for either.

#### 1.      *Plaintiffs Do Not Allege Fraudulent Statements By Husch Blackwell*

To state a claim for fraud, a plaintiff must plead facts that, if proven, would establish (1) that the defendant made a representation of fact; (2) that the representation was of a material fact; (3) that the representation was false; (4) scienter (*i.e.*, knowledge of the truth and intent to deceive); (5) justifiable reliance by the plaintiff; and (6) injury. *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 980 N.Y.S.2d 21, 27 (1st Dep't 2014). Furthermore, under federal procedural law, a plaintiff must allege fraud claims with particularity. *See* Fed. R. Civ. P. 9(b). This means, at a minimum, that a complaint must "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those

responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). Courts enforce Rule 9(b) with particular rigor when evaluating fraud claims against professionals such as attorneys. *Quintel Corp., N.V. v. Citibank, N.A.*, 589 F. Supp. 1235, 1243 (S.D.N.Y. 1984).

Plaintiffs do not specify which alleged statements form the basis of their fraud claim, instead generically referencing "numerous material misrepresentations and omissions of fact, as described in detail above." (Am. Compl. ¶ 137.) But one would search in vain to find any affirmative misrepresentations made *by a Husch Blackwell lawyer* in any of the "above" 136 paragraphs of the Amended Complaint. The absence of any affirmative misrepresentation by a Husch Blackwell lawyer, standing alone, mandates dismissal of Plaintiffs' claim for fraud.

Instead of identifying a statement of material fact, Plaintiffs provide lists of facts that Husch somehow "assisted" the Nezami Sellers in making or "allowed" them to make. In Paragraphs 91 and 97, Plaintiffs identify alleged facts that "Husch [Blackwell] actively assisted and knowingly allowed *the Nezami Sellers to falsely represent . . . .*" (Am. Compl. ¶¶ 91, 97 (emphasis added).) In Paragraph 99, Plaintiffs enumerate eleven more supposed "misrepresentations and/or material omissions *made by the Nezami Sellers*, with the assistance and active participation of [Husch Blackwell] . . . ." (*Id.* ¶ 99 (emphasis added).) But a fraud claim requires that *the defendant* make a false representation of fact. *See Basis Yield Alpha Fund*, 980 N.Y.S.2d at 27. Because these allegations involve statements by Mr. Nezami, and not Husch Blackwell, they are not actionable.

### 2.    *The Purchase Agreements Do Not Support a Claim for Fraud*

To the extent that Plaintiffs characterize the Purchase Agreements as fraudulent representations, this theory fails for a number of reasons. First, as a general matter, the fact that a lawyer drafts a contract for a client does not make the lawyer liable for representations it contains. *See Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd.*, No. 00 CV. 9214

(RWS), 2003 WL 1751780, at *11 (S.D.N.Y. Apr. 1, 2003) (dismissing fraud claim for failure to allege that the defendant lawyer engaged in any act other than drafting of an agreement with knowledge that the plaintiff would rely on it). After all, "an attorney does not ordinarily sign a contract he prepares for his client since the statements and undertakings laid out in the document are made by and binding *upon the client rather than the attorney*." *Friedman v. Hartmann*, No. 91 CIV. 1523 (PKL), 1994 WL 97104, at *6 (S.D.N.Y. Mar. 23, 1994) (emphasis added).

Here, Husch Blackwell was not a party to the Purchase Agreements, nor did it attest to their accuracy. (*See* Purchase Agreements, Am. Compl., *Exs. A–D*.) The Purchase Agreements therefore are not the statements of Husch Blackwell, and it cannot be liable for fraud based on their substance. *See Friedman v. Arizona World Nurseries Ltd. P'ship*, 730 F. Supp. 521, 533 (S.D.N.Y. 1990) (explaining that a lawyer who merely drafts a legal document cannot be held liable for general statements not specifically attributed to the lawyer), *aff'd sub nom. Frost v. Arizona World*, 927 F.2d 594 (2d Cir. 1991). To the extent that "[t]he plaintiffs assume that since [Ms. Carter] drafted the Purchase Agreement[s], she made the statements contained therein," Plaintiffs are mistaken as a matter of law. *Hartman,* 1994 WL 97104, at *6.

Second, Plaintiffs do not explain how Husch Blackwell knew that anything in the Purchase Agreements was false, thus failing to allege scienter. Although knowledge may be pled "generally," Fed. R. Civ. P. 9(b), "'generally' is not the equivalent of conclusorily." *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) (citing *Iqbal*, 556 U.S. at 686). For this reason, claims of fraud should be dismissed when stated "in broad, conclusory terms that the various defendants acted with each other's knowledge and consent." *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 518 (W.D.N.Y. 2007). A plaintiff cannot circumvent this rule by blithely alleging that a defendant, owing to her status as a lawyer, presumptively knows of the client's wrongdoing. *See*

*Arizona World*, 730 F. Supp. at 534 ("We will not assume that clients as a matter of course communicate their allegedly fraudulent schemes, in whole or in part, to their attorneys."); *Gregor v. Rossi*, 120 A.D.3d 447, 448 (1st Dep't 2014). ("The allegation that the attorneys 'knew or should have known' of the fraud is conclusory and alleges mere constructive knowledge . . . .").

Here, Plaintiffs pepper the Amended Complaint with allegations that Husch Blackwell "knew" or "had knowledge of" every aspect of Mr. Nezami's businesses dealings, finances, and personal life. With respect to the Purchase Agreements, they allege, "on information and belief," that Husch Blackwell somehow knew of supposed criminal investigations and lawsuits against Mr. Nezami. (Am. Compl. ¶ 97(d), (e).) But they do not explain, as they must, how this is so.[4] And it would be implausible to conclude that Husch Blackwell knew of every conceivable aspect of Mr. Nezami's personal and business dealings based on nothing other than his generalized statement that Ms. Carter "runs [his] life," (Am. Compl. ¶ 39.) *See Krys v. Pigott*, 749 F.3d 117, 132 (2d Cir. 2014) (discounting allegations of knowledge that were both conclusory and implausible).[5] Accordingly, Plaintiffs' fraud claim also should be dismissed as a matter of law.

---

[4] Plaintiffs also allege that Husch Blackwell somehow knew that Mr. Nezami would, at some point in the future, refuse to honor a "put option" in the Purchase Agreements. They do not, however, explain how Husch Blackwell came to possess such clairvoyance. *See Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987) (dismissing fraud claim premised on defendant's supposed knowledge of a third party's state of mind).

[5] Plaintiffs might argue that Husch Blackwell knew that the Nezami Sellers' representation that no security interests encumbered the Membership interests was false, because it allegedly drafted encumbering security agreements. But, even if true, Plaintiffs never claim that the Nezami Sellers defaulted on the secured loan, which matured more than a year ago—let alone that the secured creditor has taken action to foreclose on the Membership Interests. (*See id.*, *Ex. F* (reflecting a July 1, 2014, maturity date).) Plaintiffs do not even allege that the secured creditor would have the legal right to take such an action. In other words, Plaintiffs fail to allege an injury, rendering this allegation immaterial. *See Sotheby's, Inc. v. Minor*, No. 08 CIV. 7694 BSJ HBP, 2009 WL 3444887, at *6 (S.D.N.Y. Oct. 26, 2009) (holding that purchaser of property

### 3.   *Plaintiffs Do Not State a Claim Based on Fraudulent Omissions*

Although Plaintiffs do not plead fraudulent nondisclosure as a separate cause of action, the Amended Complaint focuses in large part on what Husch Blackwell did not say, rather than what it did. To state a claim for fraud based on nondisclosure, however, it is not enough for Plaintiffs simply to claim that Husch Blackwell failed to disclose a material fact. Instead, they must allege that Husch Blackwell owed them an independent duty to disclose the alleged fact, because "[a]bsent a duty to speak, nondisclosure does not ordinarily constitute fraud." *Jolly King Rest., Inc. v. Hershey Chan Realty, Inc.*, 625 N.Y.S.2d 35, 36 (1995).

A duty to disclose typically arises when the plaintiff and the defendant have a fiduciary or confidential relationship. *See Consol. Bus Transit, Inc.* v. *Treiber Group, LLC*, 97 A.D.3d 778, 779 (2d Dep't 2012). And, "as a general rule[,] a lawyer does not owe a fiduciary duty to non-clients with whom he is not in privity." *Doehla v. Wathne Ltd., Inc.*, No. 98 CIV. 6087 CSH, 1999 WL 566311, at *19 (S.D.N.Y. Aug. 3, 1999), *accord In re Towers Fin. Corp. Noteholders Litig.*, No. 93 CIV. 0810 (WK)(AJP), 1995 WL 571888, at *17 (S.D.N.Y. Sept. 20, 1995) ("[L]awyers have no duty to disclose information about clients to third[-]party purchasers or investors in the absence of a fiduciary or other relationship of trust between the attorney and the third party."), *report and recommendation adopted,* 936 F. Supp. 126 (S.D.N.Y. 1996). Or, to put it more bluntly, lawyers are not "required to tattle on their clients in the absence of some duty to disclose." *Morin*, 711 F. Supp. at 113 (quoting *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir. 1986)).

The case of *Schlaifer Nance & Co. v. Estate of Warhol*, 927 F. Supp. 650 (S.D.N.Y.

---

failed to allege damages when he did not claim that an attached security interest survived the purchase or decreased the property's value).

1996) illustrates the principle. There, the court dismissed a fraud claim that was based in part on allegations that a lawyer failed to correct a client's false statements. *Id.* at 661. The court emphasized that the defendant lawyer was not a party to the transaction, but rather acted solely as the seller's counsel. *Id.* at 661. It explained that "[e]ven assuming that [the lawyer] knew that [his client] was making a fraudulent statement in his presence, [the lawyer] was under no duty to speak because there was no fiduciary or attorney-client relationship between him and [the plaintiff]." *Id.* The court therefore held that the alleged omissions were not actionable. *Id.*

Here, Plaintiffs do not even attempt to allege that Husch Blackwell (1) owed them any kind of duty, (2) made an incomplete statement, or (3) made a statement which later became untrue. Their fraud claim based on omission therefore fails as a matter of law. *See, e.g.*, *Morin*, 711 F. Supp. at 113 (granting motion to dismiss fraud claim brought against a lawyer by a nonclient); *In re Towers Fin. Corp. Noteholders Litig.*, 1995 WL 571888, at *18 (same, with respect to securities fraud claim).[6]

### D.      Plaintiffs Fail to State a Claim for Aiding and Abetting Fraud

Plaintiffs also allege that Husch Blackwell aided and abetted fraudulent statements made by the Nezami Sellers. This claim, too, fails as a matter of law. To establish liability for aiding and abetting fraud, the plaintiffs must show "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (applying New York law). Applying these elements, New York courts agree that allegations involving routine legal services cannot support a claim for aiding and abetting fraud. *See Learning Annex,*

---

[6] New York recognizes a narrow exception under the "special facts doctrine," but the doctrine does not apply when, like Husch Blackwell, the defendant was not a party to the transaction at issue. *See, e.g. In re Vebeliunas*, 252 B.R. 878, 888 (Bankr. S.D.N.Y. 2000).

*L.P. v. Blank Rome LLP*, 106 A.D.3d 663 (1st Dep't 2013) (allegations that a defendant merely "provided routine legal services to the alleged fraudsters" are "insufficient to establish a claim for aiding and abetting fraud"). To determine whether an aiding-and-abetting claim can stand, New York courts look to whether the lawyer performed the acts alleged purely in her capacity as a lawyer. *Art Capital Grp., LLC v. Neuhaus*, 70 A.D.3d 605, 606-07 (1st Dep't 2010) (dismissing aiding and abetting as well as fraud and conspiracy claims against attorney where all of her alleged "acts" fell "completely within the scope of defendant's duties as an attorney.").

Here, Plaintiffs attempt to support this claim largely with a series of perfunctory assertions that Husch Blackwell "condoned," "consented to," and "acquiesced" in Mr. Nezami's scheme. But "[a]wareness and approval, standing alone, do not constitute substantial assistance." *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983). Even Plaintiffs' allegations that Husch Blackwell offered Mr. Nezami critical legal advice fails to state a claim, because "advice of counsel with respect to a client's course of conduct, even if pleaded as 'condonation,' does not thereby and without more metamorphose into a cause of action by a third party against that counsel." *Pearl v. 305 E. 92nd St. Corp.*, 156 A.D.2d 122 (1st Dep't 1989).

Pressed to plead the exact nature of Husch Blackwell's involvement, Plaintiffs muster vague allegations that the lawyers

> provided substantial assistance to the fraud perpetrated by the Nezami Sellers because they participated in the meetings and telephone conversations, contributed to the sales pitches being made by the Nezami Sellers, prepared documents both with respect to Plaintiffs' purchases of their interests in the Private Companies and with respect to the purported loans made to the Private Companies intentionally designed to hide Mr. Nezami's theft.

(Am. Compl. ¶ 133.) Allegations that a lawyer sat idly by, however, do not equate to substantial assistance. *See Morin*, 711 F. Supp. at 113 (rejecting aiding-and-abetting claim based on theory that the defendant lawyers "did not blow the whistle on their clients"); *see also Pension Comm.*

*of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 203 (S.D.N.Y. 2006) ("Absent a confidential or fiduciary relationship between the plaintiff and the aider and abettor, the inaction of the latter does not constitute substantial assistance warranting aider and abettor liability."). And, with respect to Husch Blackwell's alleged drafting of purchase agreements and loan documentation, Plaintiffs "do not even suggest that defendant acted in any capacity other than as an attorney." *Art Capital*, 70 A.D.2d at 607; *see also Gregor*, 120 A.D.3d at 449 ("The allegations that the attorneys prepared merger documents and a shareholder agreement are allegations of ordinary professional activity, not substantial assistance.") Plaintiffs' aiding-and-abetting claim therefore fails as a matter of law.

### E.    Plaintiffs Fail to State a Claim for Negligent Misrepresentation

Plaintiffs also allege negligent misrepresentation. It is apparent, for two reasons, that Plaintiffs fail to state this claim. First, as with Plaintiffs' fraud claim, they identify no affirmative misrepresentations by Husch Blackwell, as opposed to by Mr. Nezami. (*See infra* pp. 16–17.) Perhaps recognizing this deficiency, Plaintiffs—as an express basis for their negligent misrepresentation claim—allege that Husch Blackwell "assisted, aided, and abetted the Nezami Sellers in making false . . . statements." (Am. Compl. ¶ 146.) Unsurprisingly, however, "[t]here is no cause of action for aiding and abetting negligence or negligent misrepresentation in New York." *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 315 (S.D.N.Y. 2012).

Second, "[i]t is black letter law in New York that a party can assert a negligent misrepresentation claim against a professional only where there is either actual contractual privity or a relationship 'so close as to approach that of privity.'" *Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 480 (S.D.N.Y. 2001) (quoting *Ultramares Corp. v. Touche,* 255 N.Y. 170, 182–83 (1931).) Put another way, a plaintiff must allege facts establishing that a defendant owed him a

duty of care. *See Doehla v Wathne Ltd., Inc.*, No. 98 CIV. 6087 CSH, 1999 WL 566311, at *21 (S.D.N.Y. Aug. 3, 1999) (negligent misrepresentation claim against attorney dismissed where complaint was "bereft of allegations" showing any duty of care). As a general rule, however, lawyers do not owe duties of care to nonclients. *See Pope v. Rice*, No. 04 CIV. 4171 (DLC), 2005 WL 613085, at *10 (S.D.N.Y. Mar. 14, 2005).

Here, Plaintiffs identify no applicable exception to this general rule. Rather, they simply state that "Defendants had a duty to Plaintiffs as established at Common Law and by the Texas Disciplinary Rules." (Am. Compl. ¶ 144.) But, as just discussed, the "Common Law" actually establishes that Husch Blackwell *does not* owe Plaintiffs a duty of care. As for the Texas Disciplinary Rules of Professional Conduct, Plaintiffs have it backward: the rules expressly state that they "*do not* undertake to define standards of civil liability" and that "[v]iolation of a rule *does not* give rise to a private cause of action . . . ." Tex. Disc. R. Prof. Cond., Preamble ¶ 15 (emphasis added). The Texas Rules further caution that "the purpose of these rules can be abused when they are invoked by opposing parties as procedural weapons. . . . Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers . . . ." *Id.* Plaintiffs' claim for negligent misrepresentation should be dismissed.

### F.     The Negligent Supervision Claim Should be Dismissed

Finally, Plaintiffs assert a negligent supervision claim. Because this claim is derivative, the dismissal of Plaintiffs' other causes of action requires dismissal of this claim as well. *See e.g. Struebel v. Fladd*, 75 A.D.3d 1164, 1166 (4th Dep't 2010).

## III.   DISMISSAL SHOULD BE WITH PREJUDICE

If the Court grants the motion, it should dismiss the Amended Complaint with prejudice. Complying with the Court's procedures, Husch Blackwell provided Plaintiffs with an advance explanation of the reasons for its anticipated Rule 12(b)(6) motion. (*See* Premotion Letter, *Doc.*

24.) Then, during the conference, counsel discussed at length the merits of Plaintiffs' Complaint. Plaintiffs then amended, injecting even more in the way of conclusory allegations, but adding little in the way of new facts. (*Compare* Compl., *Doc.* 1, Ex. A *with* Am. Compl., *Doc.* 32.)

The prehearing conference process is "intended to prevent the parties from needlessly expending considerable time, effort, and expense in briefing the motion to dismiss and obtaining a decision on that motion, which would then be followed by yet another amended complaint and possibly a new round of motions to dismiss." *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, 318 (S.D.N.Y. 2005), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007). If Plaintiffs have new facts or a novel legal theory that would have allowed them to survive dismissal, they could have, should have—and presumably would have—included them in the Amended Complaint. Dismissal therefore should be with prejudice. *See Anatian v. Coutts Bank Ltd.*, 193 F.3d 85, 89 (2d Cir. 1999) (affirming denial of leave to amend where plaintiffs could not show how an amendment could "cure their pleading deficiencies").

## CONCLUSION

Despite amending their complaint in an attempt to avoid dismissal, Plaintiffs have failed to allege any factual allegations that, even if proven true, would plausibly give rise to an entitlement to relief. Accordingly, Husch Blackwell respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice.

Dated:  August 24, 2015                              Respectfully submitted,


                                                     _s/ Christopher P. Montville_
                                                     Carolyn J. Fairless
                                                     Christopher P. Montville
                                                     Wheeler Trigg O'Donnell LLP
                                                     370 Seventeenth Street Suite 4500
                                                     Denver, Colorado 80202-5647
                                                     Telephone: (303) 244-1800

                                                     Howard I. Elman
                                                     Jeremy C. Bates
                                                     Matalon Shweky Elman PLLC
                                                     450 Seventh Avenue, 33rd Floor
                                                     New York, New York 10123
                                                     Telephone: (212) 244-9000

                                                     Attorneys for Defendants
                                                     Husch Blackwell LLP and Diane T. Carter

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 24, 2015, I electronically filed the foregoing Defendants Husch Blackwell LLP's and Diane T. Carter's Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

**Elliot David Ostrove**
E.Ostrove@epsteinarlen.com

**Richard L. Plotkin**

R.Plotkin@epsteinarlen.com

**Howard Ian Elman**
helman@mselaw.com, amukaida@trial-lawyer.org, jbates@mselaw.com, yrothstein@mselaw.com

**Jeremy Charles Bates**
jbates@mselaw.com, jeremybates3@gmail.com

**Vahbiz P. Karanjia**
v.karanjia@epsteinarlen.com


*s/ Donna M. Simonsen*
Donna M. Simonsen