UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
:
GANSETT ONE, LLC, SES WEALTH :
ADVISORS, LLC, GW HOLDINGS, :
LLC, and MAST AND SON, LLC, :
:
                Plaintiffs, : Case No. 15-cv-3551 (ALC)
:
  -against- :
:
HUSCH BLACKWELL, LLP, :
DIANE T. CARTER, JOHN DOES :
1–10, JANE DOES 1–10, and ABC :
CORPS. 1–10, :
:
                Defendants. :
:
---------------------------------x

## Defendants Husch Blackwell LLP's and Diane T. Carter's Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Amended Complaint

                Carolyn J. Fairless
                Christopher P. Montville
                Wheeler Trigg O'Donnell LLP
                370 Seventeenth Street Suite 4500
                Denver, Colorado 80202-5647
                Telephone: (303) 244-1800

                Howard I. Elman
                Jeremy C. Bates
                Matalon Shweky Elman PLLC
                450 Seventh Avenue, 33rd Floor
                New York, New York 10123
                Telephone: (212) 244-9000

                *Attorneys for Defendants*
                *Husch Blackwell LLP and Diane T. Carter*

**October 19, 2015**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I. PLAINTIFFS FAIL TO IDENTIFY FACTS STATING A CLAIM FOR FRAUD .......... 1

    A. Plaintiffs Fail To Identify Any False Statement by Husch Blackwell .................... 1

    B. Husch Blackwell's Drafting Of Purchase Agreements Does Not Support A Fraud Claim ............................................................................................................. 2

        1. Plaintiffs Effectively Concede A Lack Of Causation ............................... 2

        2. The Purchase Agreement Is Not A Representation By Husch Blackwell ................................................................................................... 4

    C. Plaintiffs Do Not Allege Any Fact That Could Establish Scienter ......................... 4

    D. Plaintiffs Do Not Plead Any Fraud Based On Omission ........................................ 5

II. PLAINTIFFS IDENTIFY NEITHER FACTS NOR LAW SUPPORTING THEIR AIDING-AND-ABETTING CLAIM .................................................................................. 6

III. PLAINTIFFS FAIL TO ALLEGE A RICO CONSPIRACY ............................................. 7

    A. Plaintiffs Fail To Allege Participation In The Control Of A RICO Enterprise ................................................................................................................ 7

    B. Plaintiffs Fail To Allege Any Open-Ended Pattern ............................................... 8

IV. EVEN PLAINTIFFS' NEW UNPLED ALLEGATIONS FAIL TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION .................................................... 9

CONCLUSION ........................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**CASES**

*Doehla v. Wathne Ltd., Inc.*,
   No. 98 CIV. 6087 CSH, 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999) .............................. 10

*eBC, Inc. v. Map Techs., LLC*,
   No. 09 CIV. 10357 CS, 2011 WL 12847702 (S.D.N.Y. May 17, 2011) ......................... 10

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ...................................................................................... 8, 9

*Fresh Meadow Food Services, LLC v. RB 175 Corp.*,
   282 F. App'x 94 (2d Cir. 2008) ..................................................................................... 8

*Friedman v. Hartmann*,
   No. 91 CIV. 1523 (PKL), 1994 WL 97104 (S.D.N.Y. Mar. 23, 1994) ............................ 4

*Houbigant, Inc. v. Deloitte & Touche LLP*,
   753 N.Y.S.2d 493 (1st Dep't 2003) ............................................................................... 5

*In re Gas Reclamation, Inc. Sec. Litig.*,
   733 F. Supp. 713 (S.D.N.Y. 1990) ................................................................................ 3

*In re Sharp Int'l Corp.*,
   403 F.3d 43 (2d Cir. 2005) ............................................................................................ 7

*In re Vivendi Universal, S.A. Sec. Litig.*,
   634 F. Supp. 2d 352 (S.D.N.Y. 2009) ........................................................................... 2

*Laub v. Faessel*,
   745 N.Y.S.2d 534 (1st Dep't 2002) ............................................................................... 3

*Luce v. Edelstein*,
   802 F.2d 49 (2d Cir. 1986) ............................................................................................ 1

*MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*,
   928 N.Y.S.2d 229 (1st Dep't. 2011) .............................................................................. 5

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999) .......................................................................................... 3

*Negron v. Mallon Chevrolet, Inc.*,
   No. 3:08 CV 182 TPS, 2011 WL 6002082 (D. Conn. Nov. 30, 2011) .......................... 8

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ...................................................................................................... 7

*Ryan v. Hunton & Williams*,
   No. 99-CV-5938 (JG), 2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) .............................. 3

*The Cadle Co. v. Flanagan*,
   No. CIV. 301CV531AVC, 2006 WL 860063 (D. Conn. Mar. 31, 2006) ....................... 7, 8

**STATUTES**

18 U.S.C. § 1962 ............................................................................................................................ 7

**RULES**

Fed. R. Civ. P. 8 ............................................................................................................................. 1

Fed. R. Civ. P. 9 ............................................................................................................................. 1

**OTHER AUTHORITIES**

Tex. Disc. R. Prof. Cond., Preamble ¶ 15 ..................................................................................... 9

**PRELIMINARY STATEMENT**

Rather than provide a "short and plain statement" showing an entitlement to relief against the defendants in this case, *see* Fed. R. Civ. P. 8(a)(2), Plaintiffs filed an Amended Complaint with 159 paragraphs of allegations about Kamran Nezami—a nonparty. These allegations seemingly cover every aspect of Mr. Nezami's life, down to the "redness in his eyes and scars on his arms." (Memorandum in Opposition to Defendants' Motion to Dismiss, *Doc. 38*, ("Opposition" or "Opp'n"), at 2.) Entirely absent, however, are any similarly detailed allegations against Husch Blackwell LLP or Diane T. Carter (together, "Husch Blackwell"). If, buried somewhere in their morass of an Amended Complaint, Plaintiffs had alleged facts sufficient to state a claim against Husch Blackwell, one would expect Plaintiffs to identify those facts in their response to the Motion to Dismiss. Plaintiffs have not. The Court therefore should dismiss Plaintiffs' claims with prejudice.

**ARGUMENT**

**I.   PLAINTIFFS FAIL TO IDENTIFY FACTS STATING A CLAIM FOR FRAUD**

    **A.   Plaintiffs Fail To Identify Any False Statement by Husch Blackwell**

Plaintiffs' Opposition contains a subsection entitled "The Complaint Adequately Pleads Material Misrepresentations." (Opp'n at 9.) Rather than highlight specific factual allegations satisfying Rule 9(b), however, Plaintiffs offer only the same bald conclusory pronouncements made in their Amended Complaint: that Ms. Carter somehow "endorsed" or "bolstered" Mr. Nezami's activities, and "was an active participant in the Nezami Sellers' fraudulent scheme." (*Id*. at 10–12.) No matter how many times Plaintiffs repeat this theme or variations of it, rhetoric cannot substitute for facts. Plaintiffs still must point to specific facts identifying "the time, place, speaker, and . . . content of the alleged misrepresentations." *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (citing Fed. R. Civ. P. 9(b)).

The only misstatements Plaintiffs allege are misstatements made by Mr. Nezami. Plaintiffs fail to identify a single false statement made by Ms. Carter, much less a single "endorsing" or "bolstering" word that she spoke or wrote. Unable to allege that Ms. Carter made any false representation of fact, Plaintiffs fail to state a claim for fraud against Husch Blackwell.

**B.     Husch Blackwell's Drafting Of Purchase Agreements Does Not Support A Fraud Claim**

In addition to being unable to identify any misrepresentation actually made by Husch Blackwell, Plaintiffs identify only one specific "misrepresentation" having anything remotely to do with Husch Blackwell: a misrepresentation allegedly made by Mr. Nezami in Purchase Agreements that Husch Blackwell drafted. (Opp'n at 1–3, 11, 14.) The Purchase Agreements, however, do not support Plaintiffs' claims.

*1.     Plaintiffs Effectively Concede A Lack Of Causation*

Although Plaintiffs' Purchase Agreement-based theory has several shortcomings, the most fundamental is a failure to allege causation. As Husch Blackwell explained in its opening brief ("Memo."), *Doc. 34,* this is true even with respect to security interests allegedly encumbering the Membership Interests. Specifically, Plaintiffs do not allege that the secured creditor foreclosed on the interests, that he had the right to do so, or even that the security interests still exist. (*See* Memo. at 19 n.1.)

Plaintiffs attempt to remedy this fatal deficiency with a single sentence, stating that they "would not have made such investments or otherwise attempted to interest others in investing in the Private Companies and Titanium had they known the falsity of the misrepresentations and omissions." (Opp'n at 14.) Plaintiffs, however, are far from the first investors to invoke this causation theory. Indeed, the theory is so common that it has a name: "*transaction* causation." )*In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 360 (S.D.N.Y. 2009) (emphasis

added. In fraud cases, however, pleading transaction causation is not enough. Rather, a plaintiff also must allege *loss* causation:

> Allegations that but for the fraudulent statements and omissions, the plaintiffs would not have invested in the transaction in which they lost money are not sufficient. Instead, plaintiffs must prove that but for the circumstances that the fraud concealed, the investment would not have lost its value.

*In re Gas Reclamation, Inc. Sec. Litig.*, 733 F. Supp. 713, 721 (S.D.N.Y. 1990); *see also, e.g.*, *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 175 (2d Cir. 1999) (Calabresi, J., concurring) (explaining loss causation via extended analogy to bushels of cabbages). Both RICO claims and common-law-fraud claims require allegations sufficient to establish loss causation. *See id.* (discussing doctrine in RICO context); *Laub v. Faessel*, 745 N.Y.S.2d 534, 536 (1st Dep't 2002) ("Loss causation is the fundamental core of the common-law concept of proximate cause"). Consequently, a plaintiff's assertion that it "would not have invested . . . if the [defendant] had not made [the false] representation," without more, does not suffice to state any claim for fraud. *Ryan v. Hunton & Williams*, No. 99-CV-5938 (JG), 2000 WL 1375265, at *5 (E.D.N.Y. Sept. 20, 2000).

Here, to establish loss causation, Plaintiffs would have to allege that the subject matter of the representations and warranties—*i.e.*, secret security interests held by third parties; undisclosed lawsuits; or unidentified criminal investigations—caused their Membership Interests to lose value. Plaintiffs do not allege these facts, so Plaintiffs cannot use the Purchase Agreements to support their claims.[1]

---

[1] To the extent that Plaintiffs attempt to rely on the Purchase Agreements to support their claim for aiding and abetting fraud, these causation problems remain the same. Regardless of who made the alleged misrepresentations, the subject matter of those statements has nothing to do with any loss in value to Plaintiffs' investments.

### 2. The Purchase Agreement Is Not A Representation By Husch Blackwell

Husch Blackwell has also shown that documents drafted by a lawyer, but signed only by the client, cannot support any fraud claim. (*See* Memo. at 17–20.) In response, Plaintiffs point to their allegation that Ms. Carter "knew that the Agreements [c]ontained [f]alse [r]epresentations." (Opp'n. at 11.) Plaintiffs conflate the element of a false representation with that of scienter.

Plaintiffs cite no case holding that representations and warranties made in a contract are representations of the drafting lawyer.[2] And in *Friedman v. Hartmann*, No. 91 CIV. 1523 (PKL), 1994 WL 97104 (S.D.N.Y. Mar. 23, 1994), cited by Plaintiffs in support of their scienter argument, the court agreed that "to hold an attorney liable to third parties for the factual inaccuracies of every contract, or every legal document, he prepares would be to lurch towards . . . limitless liability . . . [and] . . . would impinge upon the attorney's ability to properly represent his client." *Id.* at *6.[3]

### C. Plaintiffs Do Not Allege Any Fact That Could Establish Scienter

Plaintiffs fail to identify any fact that could establish any knowledge of Ms. Carter as to the falsity of any representation. (*See* Memo. at 18–19.) Plaintiffs instead respond by dutifully reciting their theme that Ms. Carter somehow "supported the fraudulent scheme" and "lent credibility to false statements." (Opp'n at 13.) Leaving aside Plaintiffs' lack of specifics, these

---

[2] Plaintiffs make a passing attempt to distinguish the cases Husch Blackwell cited, going so far as to assert that each case "support[s] Plaintiffs' claims." (Opp'n at 12–13.) Plaintiffs attempt to draw a distinction by arguing that, unlike in the cited cases, Husch Blackwell took actions beyond the drafting of legal documents. But the *nonconclusory* allegations in the Amended Complaint simply do not support Plaintiffs' characterization of their own lawsuit.

[3] It is true that the *Friedman* court did not dismiss that plaintiff's fraud claim. *Id.* at *3–*4. The court based its reasoning, however, not on primary fraud, but instead on allegations of aiding and abetting fraud. *Id.* at *3. Husch Blackwell will shortly discuss why the aiding-and-abetting fraud claim here also cannot stand. (*See* Part II, *infra*.)  For the purpose of the direct fraud claim, however, *Friedman* cuts squarely against Plaintiffs.

generalities have nothing to do with knowledge or intent.

Instead of identifying facts, Plaintiffs cite *Houbigant, Inc. v. Deloitte & Touche LLP*, 753 N.Y.S.2d 493, 499 (1st Dep't 2003) (cited in Opp'n at 13). But *Houbigant*, which involved a fraud claim against an accounting firm, did not create any exception to the rule that a plaintiff must "allege specific facts from which it is possible to infer defendant's knowledge of the falsity of its statements . . . ." *Id.* at 499. The *Houbigant* plaintiffs met this standard with allegations that the defendant accounting firm—charged with verifying and certifying the accuracy of financial reports—had known that those reports were false. *Id.* at 498. The same cannot be said for Plaintiffs' claims that Ms. Carter, solely by virtue of her role as a healthcare lawyer, knew about Mr. Nezami's criminal record, his personal finances, his military record, or his alleged future intent to violate any contract. (*See* Opp'n at 3–8.)

Nor does *MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*, 928 N.Y.S.2d 229, 233 (1st Dep't. 2011) (cited in Opp'n. at 13), save Plaintiffs' claim. *MBIA* involved a home-mortgage lender that provided allegedly false information to the plaintiff. *Id.* at 232. The plaintiff's fraud allegations focused on information *disseminated by the defendant itself* and that *related to the defendant itself*. For example, the defendant allegedly misrepresented its own risk-management systems, its own credit rating, and the contents of its own files. *Id.* at 233. Ms. Carter, by contrast, allegedly provided false information *about Mr. Nezami*, a third party. It might be fair to infer that Mr. Nezami would know the falsity of alleged statements involving his own finances and past actions. But if Plaintiffs want the Court to reach the same inference with respect to Ms. Carter, they must make specific allegations about how she came to know the allegedly "true" facts underlying the supposed misrepresentations, which they have not done.

### D. Plaintiffs Do Not Plead Any Fraud Based On Omission

Plaintiffs allude to an alternate theory of fraud based on omission (Opp'n at 9), but they

-5-

offer nothing to support this theory. By their silence, Plaintiffs concede that they have not alleged any duty that could support any fraudulent-omission claim. (*See* Memo. at 20–21.)

## II.     PLAINTIFFS IDENTIFY NEITHER FACTS NOR LAW SUPPORTING THEIR AIDING-AND-ABETTING CLAIM

Plaintiffs insist that the Complaint "surely meets the pleading requirements for aiding and abetting." (Opp'n at 16.) At the same time, Plaintiffs acknowledge both that aiding and abetting requires allegations of "substantial assistance," and that liability cannot attach to a lawyer whose actions fall within the scope of representing a client. (*Id.* at 15; *see also* Memo. at 20–23.) Plaintiffs fail to allege facts allowing for any exception to this rule.

Plaintiffs instead focus solely on the allegation that Mr. Nezami "stole as much as $1.4 million from the Private Companies." (Opp'n at 15.) Make no mistake: Plaintiffs do not suggest that Ms. Carter assisted Mr. Nezami with this alleged theft. Instead, they assert that she helped with an after-the-fact cover-up. (*See id.* at 15.)

To evaluate this claim, one must tease apart Plaintiffs' colorful but conclusory characterizations of Ms. Carter's involvement, and focus instead on Plaintiffs' factual allegations, of which there are few. Plaintiffs claim that Ms. Carter told the Private Companies to "treat the stolen $1.4 million as loans to Nezami and as authorized draws to him . . . ," and then documented the loans. (*Id.* at 16.) Put in more neutral terms, Plaintiffs claim that Ms. Carter advised her clients that disbursements to Mr. Nezami had to be *accounted for* and *repaid*, and that she then prepared the necessary legal documents. Plaintiffs allege legal advice and services, which New York courts refuse to recognize as aiding and abetting. (*See* Memo. at 20–23.)

Plaintiffs also state that Ms. Carter "participated in the direction, 'Do not tell [Plotkin] or [Tobias].'" (Opp'n at 16.) It is unclear to what Plaintiffs refer, as the language Plaintiffs quote in their Opposition cannot be found in the Amended Complaint. Instead, Plaintiffs allege that "*in*

*the presence of* Ms. Carter at one or more of the meetings at which Mr. Nezami's theft was discussed, it *was specifically mentioned* that the representatives of the Four Entities should not be told of the theft of the funds . . . ." (Am. Compl., ¶ 6 (emphasis added).) Plaintiffs' conspicuous use of the passive voice provides little insight into who actually made any statement, but leaves no basis upon which to infer that it was Ms. Carter. This leaves only Ms. Carter's alleged "presence" at meetings, which falls far short of "substantial assistance." *See In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 2005) ("[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.").

## III. PLAINTIFFS FAIL TO ALLEGE A RICO CONSPIRACY

### A. Plaintiffs Fail To Allege Participation In The Control Of A RICO Enterprise

As Husch Blackwell explained in its opening brief, a defendant can only be liable under 18 U.S.C. § 1962(c) if he "participate[d] in the operation or management of the enterprise itself." (Memo. at 8 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).) Husch Blackwell went on to cite many cases in which courts found that allegations against lawyers, similar to those made by Plaintiffs, fail to satisfy the test. (*See* Memo. at 7–10.)

Plaintiffs ignore this authority, responding instead by discussing a single unpublished case, *The Cadle Co. v. Flanagan*, No. CIV. 301CV531AVC, 2006 WL 860063 (D. Conn. Mar. 31, 2006). In *Cadle*, the defendant lawyer allegedly participated in various schemes, including filing a false claim exemption and objection with a bankruptcy court. These affirmatively fraudulent actions bear little resemblance to the nonconclusory allegations against Ms. Carter, which do not extend beyond the drafting of promissory notes and the Purchase Agreements.

In any event, *Cadle* warrants little weight. In a later decision from the same district, a magistrate judge directly involved in the *Cadle* case cast grave doubt on the decision. The court

there explained that *Cadle* "is of dubious precedential value, since it was settled pending appeal alleging several serious, outcome-determinative flaws in the record." *Negron v. Mallon Chevrolet, Inc.*, No. 3:08 CV 182 (TPS), 2011 WL 6002082, at *7 (D. Conn. Nov. 30, 2011). Even if *Cadle* supported Plaintiffs' claims, which it does not, it could not overcome the binding Second Circuit precedent, and published case law from this district, cited by Husch Blackwell. (*See* Memo. at 11–13.)

### B. Plaintiffs Fail To Allege Any Open-Ended Pattern

With respect to RICO's continuity requirement, Plaintiffs clarify that they allege only an open-ended pattern, based on mail and wire fraud. (Opp'n at 19.) The settled analysis for open-ended continuity focuses on the nature of the businesses participating in the alleged enterprise and on the methods through which the businesses conducted the alleged enterprise. (Memo. at 11–13.) Plaintiffs ignore this framework. Plaintiffs do not contend that Husch Blackwell operates an inherently unlawful business (it does not). Nor do Plaintiffs contend that Husch Blackwell regularly conducts its business through illegitimate means (it does not).

Instead, Plaintiffs rely on *Fresh Meadow Food Services, LLC v. RB 175 Corp.*, 282 F. App'x 94, 98 (2d Cir. 2008). But the predicate acts in *Fresh Meadow* spanned a period of three and one-half *years*, *id.* at 99, whereas the predicate acts alleged here spanned no more than two and one-half *months.* (*See* Memo. at 11.) This is no small distinction; in fact, the *Fresh Meadow* court emphasized that, given the multi-year duration of the enterprise, other considerations (such as those discussed in Husch Blackwell's Memorandum) are "less critical." *Fresh Meadow*, 282 F. App'x at 99. The *Fresh Meadow* court went on to cabin liability by distinguishing the ongoing enterprise there from that in *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004), a case in which the enterprise duration was more akin to that alleged here, and in which the Second Circuit found that continuity was lacking. (*See* Memo. at 11

(discussing *First Capital*).)

Plaintiffs attempt to reframe their allegations by discussing collateral events that occurred after Plaintiffs acquired the Membership Interests. First, Plaintiffs allege that Mr. Nezami asked Plaintiffs to raise more funds for the Private Companies. (*Id.* at 20.) Plaintiffs do not allege, however, that Husch Blackwell had any involvement with these requests. They also do not explain how seeking investment in the Private Companies could constitute a predicate RICO act. (*Id.*) Second, Plaintiffs allege that Mr. Nezami asked Plaintiffs to use a charitable foundation to "open doors" for the Private Companies (*id.*), a vague allegation that also fails to identify any unlawful act. Third, Plaintiffs claim that Mr. Nezami tried to find an office in New York City for the Private Companies (*id.*)—again, not an unlawful act. Fourth, Plaintiffs allege that Mr. Nezami failed to abide by certain contractual terms. (*Id.*) In other words, Plaintiffs merely allege a breach of contract—and one that is the subject of a lawsuit in Texas.

## IV.  EVEN PLAINTIFFS' NEW UNPLED ALLEGATIONS FAIL TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION

To state a claim for negligent misrepresentation, a plaintiff must plead facts establishing privity between the plaintiff and the defendant. (*See* Memo. at 23–24.) Plaintiffs do not contend that their Amended Complaint alleges any such facts. Instead, they offer two alternate theories, neither of which salvages this cause of action.

First, Plaintiffs argue that the Texas Disciplinary Rules create a duty between lawyers and third parties. But as Husch Blackwell already pointed out, those Rules themselves caution that "nothing in the rules should be deemed to augment any substantive legal duty of lawyers," and that they "*do not* undertake to define standards of civil liability." (*See* Opp'n at 24 (quoting Tex. Disc. R. Prof. Cond., Preamble ¶ 15).) Plaintiffs cite no authority to the contrary.

Second, in a Hail Mary attempt to save their claim, Plaintiffs have submitted with their

Opposition opinion letters drafted by Ms. Carter and directed to a company associated with Mr. Nezami. (*See* Opp'n at 24, Ex. A.) But exhibits and allegations identified for the first time in a response to a motion to dismiss are not properly before the Court and should be disregarded. *See*, *e.g.*, *eBC, Inc. v. Map Techs., LLC*, No. 09 CIV. 10357 (CS), 2011 WL 12847702, at *3 n.3 (S.D.N.Y. May 17, 2011) ("Plaintiff may not supplement the Amended Complaint and remedy its factual gaps by submitting documents, not referenced or relied upon in the Amended Complaint, that contain new facts and allegations in opposition to Defendants' Motion to Dismiss.") This is especially so here, where Plaintiffs already received an opportunity to amend. (*See* Opp'n at 24–25.)

Even if the Court were to consider these letters, Plaintiffs still would not state a claim. The opinion-letter exception applies only when a lawyer issues the opinion "for the purpose of reliance by the third-party on its contents." *Doehla v. Wathne Ltd., Inc.*, No. 98 CIV. 6087 CSH, 1999 WL 566311, at *20 (S.D.N.Y. Aug. 3, 1999). Here, the letters were not directed to Plaintiffs, and nothing in the letters suggests that they were prepared for Plaintiffs' reliance. To the contrary, the letters expressly disclaim such reliance: Each states that it "should not be relied upon by third parties." (*See* Exhibit A to Opp'n, ECF Page Nos. 6, 13, 17.) Plaintiffs do not even explain which individual sent the letters to Plaintiffs or when they were sent. And crucially, Plaintiffs do not allege that anything in the opinion letters is inaccurate or caused Plaintiffs any loss. The opinion letters thus cannot form any basis for Plaintiffs' negligent-misrepresentation claim, which the Court should dismiss.

## CONCLUSION

For the reasons explained above and in Husch Blackwell's Memorandum, the Court should dismiss all of Plaintiffs' causes of action.

Dated:  October 19, 2015                Respectfully submitted,


                                        s/ Christopher P. Montville
                                        Carolyn J. Fairless
                                        Christopher P. Montville
                                        Wheeler Trigg O'Donnell LLP
                                        370 Seventeenth Street Suite 4500
                                        Denver, Colorado 80202-5647
                                        Telephone: (303) 244-1800

                                        Howard I. Elman
                                        Jeremy C. Bates
                                        Matalon Shweky Elman PLLC
                                        450 Seventh Avenue, 33rd Floor
                                        New York, New York 10123
                                        Telephone: (212) 244-9000

                                        *Attorneys for Defendants*
                                        *Husch Blackwell LLP and Diane T.*
                                        *Carter*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 19, 2015, I electronically filed the foregoing Defendants Husch Blackwell LLP's and Diane T. Carter's Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Amended Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

**Elliot David Ostrove**
E.Ostrove@epsteinarlen.com

**Richard L. Plotkin**

R.Plotkin@epsteinarlen.com

**Howard Ian Elman**
helman@mselaw.com, amukaida@trial-lawyer.org, jbates@mselaw.com, yrothstein@mselaw.com

**Jeremy Charles Bates**
jbates@mselaw.com, jeremybates3@gmail.com

**Vahbiz P. Karanjia**
v.karanjia@epsteinarlen.com

s/ Christopher P. Montville